UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LYNN ELIZABETH SOLACK,

                          Plaintiff,                    Civil Action No. 16-13862
                                                        Honorable Robert H. Cleland
                                                        Magistrate Judge David R. Grand

v.

COMMISSIONER OF
SOCIAL SECURITY,

                          Defendant.
_____/

## REPORT AND RECOMMENDATION
## ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [9, 11]

Plaintiff Lynn Solack ("Solack") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions (Docs. #9, 11), which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

I.      **RECOMMENDATION**

For the reasons set forth below, the Court finds that the Administrative Law Judge's ("ALJ") conclusion that Solack is not disabled under the Act is not supported by substantial evidence. Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment (**Doc. #11**) be **DENIED**, Solack's Motion for Summary Judgment (**Doc. #9**) be **GRANTED IN PART** to the extent it seeks remand and **DENIED IN PART** to the extent it seeks an award of benefits, and that, pursuant to sentence four of 42 U.S.C. § 405(g), this case be **REMANDED** to the ALJ for further proceedings consistent with this Recommendation.

## II.    REPORT

### A.    Background

Solack was 53 years old at the time of her alleged onset date of August 8, 2013, and at 5'3" tall weighed between 180 and 195 pounds during the relevant time period.  (Tr. 43, 167, 250).  She completed high school and, prior to filing her instant application for DIB, had a twenty-year work history as a deli manager and food service worker.  (Tr. 44-45, 250-51).  She alleges disability as a result of arthritis in her back, hip, and feet, plantar fasciitis, and foot/ankle pain.  (Tr. 250).

After Solack's application for DIB was denied at the initial level on February 4, 2014 (Tr. 84-87), she timely requested an administrative hearing, which was held on November 19, 2015, before ALJ Ena Weathers (Tr. 38-71).  Solack, who was represented by attorney Andrea Hamm, testified at the hearing, as did vocational expert Diane Regan.  (*Id.*).  On December 29, 2015, the ALJ issued a written decision finding that Solack is not disabled under the Act.  (Tr. 24-33).  On August 29, 2016, the Appeals Council denied review.  (Tr. 1-5).  Solack timely filed for judicial review of the final decision on October 24, 2016.  (Doc. #1).

The Court has thoroughly reviewed the transcript in this matter, including Solack's medical record, Function and Disability Reports, and testimony as to her conditions and resulting limitations.  Instead of summarizing that information here, the Court will make references and provide citations to the transcript as necessary in its discussion of the parties' arguments.

### B.    The ALJ's Application of the Disability Framework Analysis

Under the Act, DIB are available only for those who have a "disability."  *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or

2

mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. § 404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).  "The burden of proof is on the claimant throughout the first four steps ….  If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]."  *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following this five-step sequential analysis, the ALJ found that Solack is not disabled under the Act.  At Step One, the ALJ found that Solack has not engaged in substantial gainful activity since August 8, 2013 (the alleged onset date).  (Tr. 26).  At Step Two, the ALJ found that she has the severe impairments of plantar fasciitis, tendonitis in both feet, and arthritis in her hip,

back, and feet.  (*Id.*).   At Step Three, the ALJ found that Solack's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment.  (Tr. 27).

The ALJ then assessed Solack's residual functional capacity ("RFC"), concluding that she is capable of performing medium work, with the following additional limitations:  must have the ability to change from seated to standing (or vice versa) for 1-2 minutes every hour to two hours without interference with work product; unable to climb ladders, ropes, or scaffolds; can frequently push and pull with the lower extremity; and must avoid concentrated exposure to vibrations and hazards, including commercial driving and work at unprotected heights.  (*Id.*).

At Step Four, the ALJ concluded, based in part on testimony provided by the vocational expert ("VE") in response to hypothetical questions, that Solack is capable of performing her past relevant work as a food service worker.  (Tr. 31).  In the alternative, the ALJ concluded – again, based in part on testimony provided by the VE – that Solack is capable of performing the jobs of sorter (5,000 jobs in southeast Michigan), packer (10,000 jobs), and machine feeder (5,000 jobs).  (Tr. 32).  As a result, the ALJ concluded that Solack is not disabled under the Act. (Tr. 33).

### C.      Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted).   Substantial evidence is "more than a

4

scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole.  *See Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ.  *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).  There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record.  *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted).  If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

### D.    Analysis

In her motion, citing Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *4 (July 2, 1996), Solack argues that the ALJ erred by "failing to call a medical advisor to the hearing or obtaining an updated consultative examination in light of medical evidence documenting a

worsening of her condition."[1]   (Doc. #9 at 12).   SSR 96-6p provides that an ALJ must obtain an updated medical opinion from a medical expert "[w]hen additional medical evidence is received that in the opinion of the [ALJ] may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments."   Soc. Sec. Rul. 96-6p, 1996 WL 374180, at *3-4 (July 2, 1996); *see also Roberts v. Colvin*, 2015 WL 5432388, at *4 (E.D. Mich. July 23, 2015) ("an ALJ must seek an updated opinion on the issue of medical equivalence where medical evidence is received that may change a consultant's finding that an impairment is not equivalent to a listing")).

Here, state agency medical consultant Natalie Gray, M.D. opined on February 4, 2014, that Solack did not meet or medically equal Listing 1.02.   (Tr. 77).   That Listing provides as follows:

> Major dysfunction of a joint(s) (due to any cause):   Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s).   With:
>
> A.   Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle) resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, Listing 1.02A.   In arguing that the ALJ should have obtained an updated medical opinion, Solack cites evidence from post-February 4, 2014 visits to her treating physician, Tara Stock, D.P.M., which she asserts document new diagnoses of pes

---

[1] Solack advances other arguments in her motion for summary judgment:   specifically, that the ALJ did not comply with SSR 96-8p by not including in her RFC finding a "function-by-function assessment" of the seven strength demands (sitting, standing, walking, lifting, carrying, pushing, and pulling); and that the ALJ failed to consider the side effects of her medications, and the effects of her non-severe impairments, on her ability to work.   (Doc. #9 at 14-21).   Because the Court is recommending remand on other grounds, it need not pass on Solack's other alleged errors.   Nevertheless, on remand the ALJ should fully consider all of these issues.

cavus and tarsal tunnel syndrome. (*Id.* (citing Tr. 406-15, 426-38, 476-88, 490-93)). She argues that, in addition to reflecting these new diagnoses, the cited medical records document "more advanced medical treatment[,]" such as the fact that she underwent injections in her knees and a posterior tibial nerve block of the right foot, and that "fusion of her left STJ joint was discussed and recommended." (*Id.* at 12-13). For the reasons set forth below, the Court agrees that the record contains a substantial amount of medical evidence, which was generated after Dr. Gray issued her opinion, and which reasonably could have changed her opinion as to whether Solack medically equals Listing 1.02A. *See* Soc. Sec. Rul. 96-6p, 1996 WL 374180, at *3-4 (July 2, 1996).

As set forth above, Dr. Gray reviewed Solack's records only through February 4, 2014. (Tr. 72-80). At that time, Solack – who had worked for more than twenty years in food prep and deli manager positions, but was finding it increasingly difficult to be on her feet for any length of time due to chronic pain and arthritis in her feet and ankles – had merely been taken off work for three months (from August to November 2013) by her treating physician, Tara Stock, D.P.M. (Tr. 45, 233, 339). Indeed, on October 1, 2013, after having been off work for almost two months, Solack reported "feeling a little bit better," although she still had pain in her right heel and left ankle. (Tr. 424).

Subsequently, Solack underwent a consultative examination with Harold Nims, D.O. on January 17, 2014. (Tr. 406-14). Solack complained of left ankle pain and plantar fasciitis in both feet, saying she had had casts put on her feet and ankles, monthly shots, and a three-month medical leave, but nothing alleviated her pain. (Tr. 406). She ambulated with a normal gait, and other than 1+-2+ nonpitting edema in the lower legs and ankles bilaterally, examination of her feet and ankles was essentially normal. (Tr. 407, 409). Dr. Nims opined that Solack's ability to

perform work-related activities such as bending, stooping, lifting, walking, crawling, squatting, carrying, and traveling, as well as pushing and pulling heavy objects, was only mildly impaired. (Tr. 410).

In contrast to this medical evidence, which was all that Dr. Gray had before her in opining as to whether Solack meets or medically equals a Listing, subsequent evidence appears to demonstrate a worsening in Solack's condition.  For example, on March 20, 2014, Solack reported pain in her right heel and left ankle, worse with walking, and which was sufficient to wake her at night.  (Tr. 426).  She had pain with subtalar joint range of motion, with palpable crepitus, and a positive Tinel sign at the posterior tibial nerve and medial plantar nerve of her left ankle and foot (which resulted in a new diagnosis of neuritis).  (*Id.*).  At this same visit, Dr. Stock discussed the results of an MRI, stating as follows:

> Discussed osseous fragmentation visible in [MRI] left [subtalar joint] abutting medial plantar nerve, cause of neuritis.  Discussed treatment with injection, and [prescription] given for brace modification to decrease pressure in this area.  Discussed [subtalar joint] fusion if bracing and injections fail.

(*Id.*).  Dr. Stock administered a therapeutic nerve block to the posterior tibial nerve of the left foot for the first time.  (*Id.*).  On November 13, 2014, Solack had pain on palpation at the left sinus tarsi and left subtalar joint, pain with range of motion at the left subtalar joint, and pain on palpation at the right medial heel.  (Tr. 476).  Dr. Stock recommended that Solack wear a Richie brace on her left leg and orthotics on the right and again discussed both injections and the possibility of fusion surgery at the left subtalar joint.  (*Id.*).  On December 11, 2014, Solack reported that her left ankle and foot were painful, saying that she gets a "locking feeling" when walking.  (Tr. 478).  An injection was administered to the left subtalar joint.  (*Id.*).  On March 16, 2015, Solack reported "shooting pains" in the big toe on her right foot, as well as burning pain in both arches.  (Tr. 484).  An EMG was ordered, which came back normal, but Solack had

continued pain, crepitus, and a positive Tinel sign at the right posterior tibial nerve on May 7, 2015, and a therapeutic nerve block was administered to that nerve that day. (Tr. 482). On June 9, 2015, Solack again reported pain with "trying to stand on her feet for any length of time." (Tr. 490). She was diagnosed with pes cavus and tarsal tunnel syndrome, received another injection to the left subtalar joint, and started medication for neuritis.[2] (Tr. 490-91).

The Commissioner acknowledges the existence of the medical evidence post-dating the state agency physician's opinion, but argues that the ALJ "implicitly decide[d] that new evidence would not change the opinions of the experts by finding that it did not save the claim." (Doc. #11 at 8 (citing *Courter v. Comm'r of Soc. Sec.*, 479 F. App'x 713, 724 (6th Cir. 2012)). The Court recognizes that where such an "implicit" decision can be gleaned from the ALJ's decision and is supported by the record, remand is not required. In this case, however, where the ALJ made no mention of the documented worsening of Solack's condition after February of 2014 – and, indeed, seemed to suggest there was no such deterioration – the Court simply cannot conclude that the ALJ "implicitly" decided that this evidence would not have altered Dr. Gray's opinion as to medical equivalence.

The Commissioner also argues that the evidence does not establish that Solack meets a listing and, thus, does not render Dr. Gray's opinion untenable. (Doc. #11 at 9-11). As set forth above, Listing 1.02A is characterized by: (1) gross anatomical deformity; (2) chronic joint pain and stiffness with signs of limitation of motion of the affected joints; and (3) findings on

---

[2] The record also contains an opinion from Dr. Stock, dated December 3, 2015, but apparently not transmitted to the Agency until after the ALJ's decision was issued on December 29, 2015. (Tr. 492-93). In that document, Dr. Stock opined that Solack is limited to only four hours of standing in an eight-hour workday (one hour at a time), and only one hour of walking in an eight-hour workday. (Tr. 492). Dr. Stock further indicated that Solack needs to sit every hour for 10-15 minutes per hour and, when sitting, needs to elevate her feet to hip level. (Tr. 493). Solack similarly testified that whenever she is sitting, she will "usually have [her] feet up." (Tr. 56; *see also* Tr. 63).

appropriate medically acceptable imaging of joint space narrowing, bony destruction, or anklylosis of the affected joints; with (4) involvement of one peripheral weight-bearing joint resulting in an inability to ambulate effectively.  *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, Listing 1.02A.  The Commissioner argues that the "MRI report from April 8, 2013, does not reveal any gross anatomical deformities."  (Doc. #11 at 10 (citing Tr. 400-01)).  But, there is evidence of "osseous fragmentation visible in MRI left [subtalar joint] abutting medial plantar nerve," and x-rays performed in March 2014 revealed os trigonum on the left.  (Tr. 426).

Similarly, the Commissioner asserts that "Dr. Nims observed [in January 2014] that Plaintiff had a full range of motion in her ankle."  (Doc. #11 at 10 (citing Tr. 30)).  But, at several subsequent visits, Dr. Stock noted that Solack had pain with range of motion or limited range of motion.  (*E.g.,* Tr. 426, 476, 478, 482, 490).  Moreover, x-rays performed in March 2014 showed "decreased [subtalar joint] space."  (Tr. 426).  And, although the Commissioner points out that Solack was never prescribed an assistive device (Doc. #11 at 10), there is other evidence at least suggesting that Solack had an "inability to ambulate effectively," in the sense that she cannot walk a block at a reasonable pace on rough or uneven surfaces and is unable to climb a few steps at a reasonable pace, even with the use of a hand rail.  (Tr. 406 (climbs stairs slowly and can no longer walk on uneven ground)).

Moreover, even if Solack does not meet all of the criteria of Listing 1.02A, "an ALJ can find that the impairment is 'medically equivalent' to the listing if the claimant has 'other findings related to [the] impairment that are at least of equal medical significance to the required criteria.'"  *Thomas v. Comm'r of Soc. Sec.*, 2014 WL 688197, at *8 (E.D. Mich. Feb. 21, 2014) (quoting 20 C.F.R. § 416.926(a)).  Here, while the medical evidence generated after Dr. Gray issued her opinion may not ultimately change the outcome of this case, it is at least sufficient to

require a more full and explicit consideration of medical equivalence by an appropriate medical expert, whose opinion may then be evaluated by the ALJ in deciding whether Solack meets or medically equals Listing 1.02A. Accordingly, the case should be remanded so that an updated medical opinion can be obtained.

## III.    CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment (**Doc. #11**) be **DENIED**, Solack's Motion for Summary Judgment (**Doc. #9**) be **GRANTED IN PART** to the extent it seeks remand and **DENIED IN PART** to the extent it seeks an award of benefits, and that, pursuant to sentence four of 42 U.S.C. § 405(g), this case be **REMANDED** to the ALJ for further proceedings consistent with this Recommendation.


Dated: January 4, 2018                    s/David R. Grand
Ann Arbor, Michigan                       DAVID R. GRAND
                                          United States Magistrate Judge


## <u>REVIEW</u>

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *See Willis v. Sec'y of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers*

*Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  A copy of any objection must be served upon this Magistrate Judge.  *See* E.D. Mich. L.R. 72.1(d)(2).

   *Note these additional requirements at the direction of Judge Cleland:*

   Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains.  Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.  The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.

## CERTIFICATE OF SERVICE

   The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 4, 2018.

                                        s/Eddrey O. Butts
                                        EDDREY O. BUTTS
                                        Case Manager